UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**ANTHONY SALAZAR**,   Case No. 2:14-CV-00526-KI

        Petitioner,   OPINION AND ORDER

   v.

**JEFF PREMO**,

        Respondent.

Francesca Freccero
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, OR 97204

    Attorney for Petitioner

Ellen F. Rosenblum
Attorney General
Kristen E. Boyd
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Respondent

Page 1 - OPINION AND ORDER

KING, Judge:

Petitioner Anthony Salazar, an inmate in the custody of the Oregon Department of Corrections, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I deny the petition and dismiss this proceeding with prejudice.

## BACKGROUND

Detective Dusablon with the Klamath County Sheriff's Office found Eddie Pelletier and Levi Brown (aka "Wright") dead in Stevenson Park on September 6, 2002. One witness informed another detective that on September 5 he had seen Salazar with Pelletier, Wright, and a third man (later learned to be Paul Maynard) who was flashing around a .22 caliber handgun. Salazar and Wright had been in a fight earlier in the year. Police interviewed Maynard who informed them he had been at the park with Salazar and, while he was going to the bathroom in the bushes, he heard shots fired. Salazar then walked up to him and pointed a gun in his face and told him if he said anything Salazar would kill him and his nephew.

Detective Dusablon recorded this information in an affidavit to support a search warrant; a little after 11:00 p.m. that same day he submitted the warrant, affidavit, and five duplicate copies of the warrant to Judge Isaacson for his signature. Judge Isaacson signed all six warrants at 11:40 p.m., handed over five of them to permit the search of two locations, two persons, and one vehicle, and retained one for filing. After execution of these warrants, police took Salazar into custody.

One of Salazar's boots, seized pursuant to the warrant, had blood spatter on it which forensic testing confirmed belonged to Pelletier and Wright.

Salazar was charged on September 16, 2002 with two counts of Aggravated Murder, two counts of Murder, one count of Conspiracy to Commit Aggravated Murder, and two Counts of Conspiracy to Commit Murder. Salazar's trial counsel unsuccessfully challenged the search warrant and, specifically, the admissibility of the seized boot.

Salazar entered a plea of no contest on September 18, 2003, conditioned on permission to appeal the trial court's denial of his suppression motion, and on his ability to argue for a sentence of life with the possibility of parole in 30 years. In addition, the prosecutor agreed not to seek the death penalty. After a lengthy hearing, the trial court sentenced Salazar to two terms of life in prison without the possibility of parole. Salazar appealed the trial court's suppression decision and the Oregon Court of Appeals affirmed without opinion. The Oregon Supreme Court denied review.

Salazar brought a petition for post-conviction relief ("PCR"), alleging three grounds for relief: (1) his trial counsels' failure to explain appellate procedures constituted ineffective assistance of counsel; (2) it was a denial of his due process rights when the Oregon Court of Appeals' affirmed the trial court's decision without writing an opinion, and when the Oregon Supreme Court denied review; and (3) his trial attorneys failed to adequately challenge facts in the affidavit supporting the search warrant, constituting ineffective assistance of counsel. After a hearing, the PCR court denied Salazar's petition. Salazar's PCR appellate counsel brought two assignments of error as follows: (1) the PCR court erred in dismissing Salazar's ineffective assistance of counsel claim based on trial counsels' failure to ensure a knowing and voluntary no contest plea; and (2) the PCR court erred in denying Salazar's attempt to file a *pro se*

Page 3 - OPINION AND ORDER

supplemental petition. After some procedural back-and-forth, the appellate court eventually summarily affirmed the PCR court's decision, and the Oregon Supreme Court denied review.

## LEGAL STANDARDS

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The state court's findings of fact are presumed correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d) is a "'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)) (other internal quotation omitted), *cert. denied*, 133 S. Ct. 1262 (2013). "'[T]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold.'" *Id.* at 1146 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## DISCUSSION

Salazar brings 21 grounds for relief. Respondent argues, and Salazar does not dispute, that grounds 14 through 17 and 20 through 21 are not cognizable claims in this proceeding as they involve ineffective assistance of post-conviction counsel. 28 U.S.C. § 2254(i) ("[T]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction

proceedings shall not be a ground for relief in a proceeding arising under Section 2254."). Similarly, grounds 18 and 19 are not cognizable in this proceeding as they allege error in the post-conviction proceeding. *See Cooper v. Neven*, 641 F.3d 322, 331-32 (9th Cir. 2011) (citing *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam) ("[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings.")). Salazar does not argue otherwise. Habeas relief is denied on grounds 14 through 21.

Respondent asserts Salazar failed to exhaust the remaining claims alleged in grounds four through 13, that in his trial and direct appeal he advanced the issues alleged in grounds one and two as state law violations only, and that the Oregon state courts denied Salazar relief on ground three in a decision that was neither "contrary to," nor an "unreasonable application of," United States Supreme Court precedent.

I.     Exhaustion and Procedural Default

Respondent questions whether Salazar properly exhausted grounds one and two, as well as four through 13 and contends these grounds are now procedurally defaulted. Salazar argues only that he should be excused from his default on grounds five, seven, and nine, relying on the inadequate assistance of post-conviction counsel exception outlined in *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A). A state prisoner satisfies the exhaustion requirement by "fairly presenting" his claim to the appropriate state courts at all appellate stages afforded

Page 5 - OPINION AND ORDER

under state law, including a state supreme court with powers of discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *O'Sullivan*, 526 U.S. at 848; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Here, Salazar filed a direct appeal, a PCR petition, and an appeal from the PCR court's decision and failed to raise the issues reflected in grounds four through 13 at all of these available stages. The issues alleged in grounds one and two, directed at trial court error for admitting evidence subject to suppression, raised only state law questions at the trial court and appellate level and failed to raise an issue under federal law. Because Salazar failed to "fairly present" to the appropriate state court the claims alleged in grounds one, two, and four through 13, the claims are now deemed procedurally defaulted because they were not and cannot now be properly exhausted. *Coleman*, 501 U.S. at 732 (unexhausted claims that would be untimely if the petitioner attempted to exhaust them now are procedurally defaulted).

II.     Application of *Martinez v. Ryan*

Salazar relies on *Martinez v. Ryan* as a basis for establishing "cause" for his default of the claims alleged in grounds five, seven, and nine. In that case, the Supreme Court held ineffective assistance of counsel in an initial-review state collateral proceeding may provide cause to excuse the procedural default of an ineffective assistance of trial counsel claim, provided that the defaulted claim is "substantial." 132 S. Ct. at 1318-20. Accordingly, to invoke this narrow exception, Salazar must persuade the court that: (1) his ineffective assistance of trial counsel claims are "substantial;" (2) the "cause" consisted of there being "no counsel" or only

"ineffective" counsel during the PCR proceeding; (3) the state PCR proceeding was the "initial" review proceeding; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding. *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19). Only the first two factors are at issue.

Thus, in order to proceed to the merits of his ineffective assistance of counsel claims, Salazar must demonstrate that (1) his "'underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that . . . the claim has some merit[,]'" and (2) establish that post-conviction counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) (quoting *Martinez*, 132 S. Ct. at 1318).

A claim must be examined under the two-part test set out in *Strickland* to determine whether it is substantial. Pursuant to that test, petitioner must show both (1) that the attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 688. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy." *Id.* at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight. *Id.* at 689-90. A defendant is prejudiced by counsel's poor performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The substantiality of the claim and the ineffectiveness of post-conviction counsel factors are interwoven because "[if] the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of the post-conviction proceedings

would have been different." *Clabourne*, 745 F.3d at 377. Additionally, "[i]f trial counsel was not ineffective, then [petitioner] would not be able to show that PCR counsel's failure to raise claims of ineffective assistance of trial counsel was such a serious error that PCR counsel 'was not functioning as the "counsel" guaranteed' by the Sixth Amendment." *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 687).

      A.      Ground Five: Not Subject to the *Martinez* Exception

Respondent disagrees that Salazar's fifth ground is subject to the *Martinez* exception; Salazar's PCR counsel did allege the claim in the PCR petition. It was Salazar's PCR appellate counsel who did not include the claim in Salazar's appeal. As the *Martinez* court noted, "The holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 132 S. Ct. at 1320 (emphasis added); *see also Taylor v. Coursey*, No. 2:12-cv-00370-JO, 2014 WL 229829 (D. Or. Jan. 21, 2014) ("petitioner's post-conviction appellate counsel's alleged ineffectiveness in failing to raise certain claims does not provide a legal basis for excusing the procedural default of the underlying ineffective assistance of trial counsel claim"). Salazar's procedural default of this claim cannot be excused under *Martinez*.

      B.      Grounds Seven and Nine: Insubstantiality of Salazar's Ineffective Assistance of Counsel Claims

Grounds seven and nine involve trial counsel's failure to make specific suppression arguments. Salazar argues in ground seven that his counsel was ineffective for failing to challenge execution of the warrant as follows:

>There were a number of issues surrounding the execution process, and return of search warrants, ect, that were never challenged by my trial and appellant attorneys: (A) there were numerous multiple original search warrants. Each warrant lacked specific locations of where they were to be served; (B) the "return of search warrants" (in respondents appellant brief) has written in black marker what item or location was searched. But that writing mysteriously showed up in respondents brief in direct appeal. Nowhere else in discovery is that writing there; (C) on the "return of search warrants" it says that the search warrants are attached to the "returns." But they're not. And they're supposed to be according to ORS 133.615(2) and (3). At least 2 search warrants went missing prior to appeal; (D) only 6 search warrants were known to be issued, but a 7th was mysteriously found in direct appeal respondents brief; (E) on pages SER-20 and SER-21, in respondents brief, is a "return" and a list of DNA confiscated from me. The timing doesn't match up on the 2 forms. But the state claims the 2 forms go together.

Respondent argues Salazar failed to develop the claim in his briefing. I agree and without explanatory briefing I struggle to see the significance of these alleged errors. In any event, trial counsel argued many of these issues. For example, the trial court's order explained that, based on the evidence adduced at the hearing, he found Judge Isaacson signed six identical copies of a warrant specifically listing permission to search two locations, two persons and one vehicle. Judge Isaacson expected five of these warrants would be used as copies even though they had his original signature on them. The trial court's order also references the fact that two of the duplicate original warrants were missing. The State acknowledged that the actual warrants served on the defendant and one of the locations were not included with the returns, but the trial court found because Judge Isaacson retained the original warrant, which he filed with the court, there was no statutory violation. The trial court's order also concluded that failure to return a warrant to the issuing judge is merely a ministerial error and does not rise to a constitutional violation. Further, with respect to one of the missing warrants served on Salazar himself, one of the officers testified to watching a video recording of himself reading the warrant to Salazar in

Page 9 - OPINION AND ORDER

which he told Salazar the warrant contained permission for day or night execution. In the end, the trial court concluded Salazar was not prejudiced by these irregularities.

Additionally, Salazar's appellate counsel challenged the denial of the suppression motion on the basis that the nighttime search was illegal since one duplicate original warrant filed with the court did not authorize such a search. He also argued only one of the duplicate original warrants was filed with the return, violating statutory requirements for filing such documents. Salazar does not expand on the allegations he makes in his petition that would have supported these arguments on appeal.

In ground nine, Salazar alleges his trial counsel failed to object or challenge testimony from the judge who signed the warrant as to the judge's intent in marking the search warrant for a nighttime search, when the judge could not recall the search warrant. Respondent points out that neither in his petition nor in his briefing does Salazar identify the basis for any objection trial counsel should have stated. In any event, trial counsel *did* object to the question, "Would it have been your intent that some of the warrants, these original copies, be executed at any time of the day, and then some not?" Resp't Ex. 104, Tr. 41:19-42:2. Following defense counsel's objection, the prosecutor rephrased his question to ask Judge Isaacson about his practice instead of his intent. Judge Isaacson testified that he had no independent recollection, but relied on the duplicate originals to support his testimony that he permitted the officers to execute the warrants at any time.

Even if reasonable jurists could argue that trial counsel acted deficiently, Salazar still fails to meet the first *Martinez* prong because he has not established prejudice. To do so, Salazar must

show a reasonable probability that but for counsel's failures, the result would have been different. *Hurles v. Ryan*, 752 F.3d 768, 782 (9th Cir. 2014).

With regard to ground seven, Salazar has not explained how he was prejudiced by the irregularities, and I can find no support for such a finding.

As for ground nine, even if Judge Isaacson's testimony can be interpreted as testimony about his intent and it had been excluded, the trial court had ample evidence from which it could glean the judge's intent. The officer presented the warrant, affidavit, and duplicate warrants to Judge Isaacson after 11:00 p.m. in furtherance of a double murder investigation. The duplicate warrants that could be found all contained the judge's permission for day or night service. A video recording of an officer reading one of the two duplicate warrants that could not be found confirmed that the warrant contained the judge's permission for day or night service. The experienced officer who served the other missing duplicate warrant testified he would have noticed if the warrant did not have the nighttime permission marked. Judge Isaacson testified it was his practice to mark all of the duplicate warrants in the same manner. Finally, Judge Isaacson signed all six warrants at 11:40 p.m. In sum, excluding any objectionable testimony would not have changed the outcome of the suppression hearing considering the following facts: the time of night, the fact that the warrant was in support of an investigation into a double murder, and the evidence demonstrated all but one of the duplicate warrants (the one Judge Isaacson kept for filing) permitted night service.

In sum, Salazar has not persuaded me that his ineffective assistance of trial counsel claims are substantial as required by *Martinez*. Accordingly, any ineffective assistance of PCR counsel does not constitute cause to excuse his procedural default.

Page 11 - OPINION AND ORDER

III.  Ground Three:  Voluntariness of No Contest Plea

In his only cognizable claim, Salazar contends his no contest plea was not made voluntarily and intelligently because his counsel failed to ensure Salazar understood the law applicable to appeals.  Specifically, Salazar alleges:

> [M]y trial attorneys failed to adequately explain to me that the Oregon Supreme Court and Oregon Court of Appeals had the option to deny my review to direct appeal and issue a written opinion.
> Supporting Facts:  I pled no contest on the condition that I'd have the <u>right</u> to an appeal and full review of the legal arguments made in my motion to suppress.  The issue was important enough to me that I insisted it be part of my plea agreement/a contract.  I was led to believe I'd have full appeal and review rights as in any other death penalty case.  My trial attorneys failed to adequately explain the review to appeal and written opinions are optional by the Oregon Court of Appeals and Oregon Supreme Court.  This ineffectiveness prejudiced me.  If I would have known this, I'd of never pled out and signed a plea agreement.

The PCR court rejected Salazar's contention as follows:

> Petitioner did receive review on appeal and it is not credible that he would have risked the death penalty if he thought that the Court of Appeals might affirm without writing an opinion or that the Supreme Court might deny review without an opinion.  He got a great deal in that he pleaded no contest, which preserved his right to appeal to the Court of Appeals, and he avoided the – and he received the possibility by this deal of a life sentence with the possibility of parole.  That's not what happened, but he never gave up the right to appeal and he had the possibility that the judge might be persuaded at sentencing not to impose what we referred to as true life.  So I find that this matter is completely without merit.

Resp't Ex. 125, Tr. 16:16-17:5.  In its written order, the PCR court added, "There was no error by counsel.  No attorney would have told Petitioner that he had a right to direct review by the Sup. Ct."  Resp't Ex. 126, at 2.

The appellate court summarily affirmed the PCR court's decision, finding:

> The only evidence that the terms of the plea agreement in the underlying criminal case included the requirement that either the Court of Appeals or the Supreme Court would decide the appeal by a published opinion was appellant's testimony

Page 12 - OPINION AND ORDER

> to that effect. However, the trial judge was entitled to disbelieve appellant's testimony; indeed, the trial judge found that appellant's testimony was not credible. In the absence of credible evidence in support of appellant's contention, his claim for post-conviction relief fails.

Resp't Ex. 136. The Oregon Supreme Court denied review.

A petition for writ of habeas corpus, filed by a state prisoner, shall not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the Supreme Court of the United States" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Salazar challenges the PCR court's analysis on both grounds.

A.      Not Contrary to Federal Law

Salazar contends the PCR court acted contrary to federal law because fairminded jurists could disagree with the PCR court and conclude Salazar was not provided effective assistance of counsel when his attorneys did not inform him about the appellate process.

To prevail on a claim of ineffective assistance of counsel, petitioner must show both (1) that the attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 688. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, or what "might be considered sound trial strategy." *Id.* at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight. *Id.* at 689-90.

A federal court reviews a state court's application of *Strickland* for reasonableness, not for correctness. *Hibbler*, 693 F.3d at 1150. The federal court does not ask "'whether counsel's

actions were reasonable'" but "'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.* (quoting *Harrington*, 562 U.S. at 105). "Accordingly, a 'doubly deferential judicial review' applies to *Strickland* claims rejected by the state court." *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

A guilty plea is only valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In addition, in this context, Salazar "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

The PCR court concluded the plea offer was a "great deal" which allowed Salazar to "preserve[] his right to appeal" and allowed him to argue for a sentence of life with the possibility of parole. Resp't Ex. 125, Tr. 16:21-23. Salazar does not dispute that he appealed the trial court's suppression decision. He cites no case suggesting he did not receive appellate review simply because the appellate court did not issue a written decision. The PCR court received into evidence affidavits from both trial counsel, neither of whom remembered Salazar asking whether a written opinion would issue. One of the attorneys had notes about the questions Salazar asked which did not include a question about the Court of Appeals issuing a written opinion. Both attested that if a client were to ask, the answer would be the Court of Appeals does not have to write an opinion. There was no evidence, other than Salazar's testimony, that either attorney ever told Salazar the Court of Appeals would be required to write an opinion. The PCR court also concluded no attorney would have told Salazar he was entitled to review by the Oregon Supreme Court. The trial attorneys both attested that they knew, and would have told

Salazar had he asked, that the Supreme Court has discretion whether to accept a petition. The only evidence to the contrary was Salazar's testimony. Given this evidence, it was not unreasonable for the PCR court to conclude that the conduct of Salazar's attorneys fell within the range of competence required of criminal attorneys. *Strickland*, 466 U.S. at 689.

In addition, it was not unreasonable for the PCR court to conclude Salazar's testimony was not credible that he would have foregone the plea offer (which included the ability to ask for a sentence with the possibility of parole), and would have risked the death penalty in order to gain a written decision and further appellate review. In sum, the determination that counsels' performance was not ineffective, and that trial counsels' performance did not prejudice Salazar's defense, is not contrary to, nor an unreasonable application of, *Strickland v. Washington*.

B.     Factual Findings Not Objectively Unreasonable

Salazar contends the PCR court did not correctly evaluate the credibility of his statements. He specifically challenges the PCR court's conclusion that (1) it was not credible he would have risked the death penalty if he thought the Court of Appeals might affirm without opinion or that the Supreme Court would deny review; and (2) that no attorney would have told him he had a right to direct review by the Supreme Court.

The state court's findings of fact are presumed correct, and a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Salazar has not met his burden of rebutting the presumption of correctness. Salazar does not dispute the PCR court's finding that he *did* receive review on appeal. Neither counsel had an independent recollection of talking with Salazar about his appeal rights, and neither has any note that Salazar asked about whether a written opinion would be issued on his appeal, but

both testified they would have told him a written opinion need not issue. There is certainly no evidence either counsel promised him he *would* receive a written opinion. Both attorneys also reported they generally inform a client that the Supreme Court has discretion whether to accept a petition. Regardless, Salazar offers no evidence–other than his own testimony–that he would have risked the death penalty even if he had known the information he says his counsel failed to tell him. As the PCR court concluded, Salazar's no contest plea gave him the opportunity to offer evidence in support of a life sentence with the possibility of parole. The PCR court's factual findings were not objectively unreasonable under 28 U.S.C. § 2254(d)(2).

## CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus [4] is denied. This proceeding is dismissed with prejudice. Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this   18th   day of September, 2015.

　　　　　　　　　　　　　　　　　　  /s/ Garr M. King
　　　　　　　　　　　　　　　　　　Garr M. King
　　　　　　　　　　　　　　　　　　United States District Judge